NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY ANDREW RAY,<br><br>*Plaintiff,*<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>*Defendant.* | Civil Action No. 15-3285<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Anthony Andrew Ray's request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security's unfavorable decision with respect to Ray's application for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). For reasons set forth below, the Commissioner's decision is **VACATED AND REMANDED.**

I.  **APPLICABLE LAW**

   A.  **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003).

1

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review. The reviewing court should not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans V. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).

### B. Five-Step Sequential Analysis

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's

"physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has a "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. BACKGROUND

### A. Procedural History

In December 2011, Ray applied for Disability Benefits based on physical impairments. Tr. 253-54. He alleged disability since September 11, 2009 due to diabetes, hypertension, blood clots, and chest pains. Id. Ray's application was denied initially and again on reconsideration. Tr. 134-44, 147-52. At Ray's request, ALJ Hilton R. Miller (the "ALJ") held an administrative hearing on June 6, 2013. Tr. 27-47. After the first hearing, Ray provided additional medical records and a second hearing was held on Sept. 10, 2013. Tr. 48-97. Ray and Vocational Experts ("VE")

testified at each hearing. Tr. 27-97. By decision dated Dec. 10, 2013, the ALJ found Ray not disabled and denied disability on the grounds that he could resume his past work as a mailroom supervisor. Tr. 12-26. On March 12, 2015, the Appeals Council denied Ray's request for review, which rendered the ALJ's decision the Commissioner's final decision. Tr. 1-6. Having exhausted his administrative remedies, Ray filed this action seeking review of the final decision.

**B. Factual Background**

Ray is a 57-year-old man who alleged that he became disabled on September 11, 2009. Tr. 253-54. He later amended his onset date to July 30, 2011, when his unemployment benefits ran out. Tr. 35, 252. Ray worked for twenty-five years as a mailroom supervisor. Tr. 287. He was laid off in 2009. Tr. 32. In his application, Ray alleges disability due to diabetes, hypertension, blood clots, and chest pains. Tr. 257, 280. Despite these conditions, Ray is still able to care for his cat, prepare meals on a daily basis, use public transportation, shop, read, and sew. Tr. 295-98. He can also mop floors, wash dishes, and shovel snow. Tr. 296. He is able to walk for thirty minutes before needing a break. Tr. 299.

Ray testified that he can no longer work due to diabetes and hypertension. Tr. 32. He claimed to experience shortness of breath, chest pain, swelling and weakness in his left side, and difficulty walking and lifting. Tr. 32, 38. He also claimed to experience numbness and tingling in his hands. Tr. 58. Ray further testified that he had neck pain and numbness on his right side. Tr. 52. Ray has suffered from vision problems since his childhood. Tr. 382. In November 2011, Ray had abscesses drained and experienced a blood clot in an incision point in his right arm. Tr. 339-66. At the time of the drainage, Ray was diagnosed with diabetes, type II, and uncontrolled hypertension. Tr. 339.

In December 2011, Ray began treatment with Dr. Sujovolsky at Horizon Health Center. Tr. 367. Dr. Sujovolsky commented that Ray had "not taken the insulin as it was prescribed by

4

the hospital over a month ago," nor had he gotten his lab work done. Tr. 367. Ray's neurological exam was normal; his cranial nerves were all grossly intact, save his vision, and he demonstrated normal and symmetrical grip strength. Tr. 405. In August 2013, Ray also treated with Drs. Gilberto F. Gastell and Alexander Hesquijarosa who diagnosed him with neuropathy/radiculopathy and insulin dependent diabetes. Tr. 637. But there are no treatment notes or objective findings in their records, only prescriptions written on August 5, 2013. Tr. 637-39.

On February 10, 2012 and April 25, 2013, Ray underwent electrocardiograms, which revealed possible ischemia. Tr. 382, 390, 604. In April 2013, Ray was admitted to Jersey City Medical Center with complaints of chest pain. Tr. 565. He described "hot flash" sensations across his chest and spasms in his right chest muscle. Tr. 574. Dr. Joy Rogers examined Ray and observed "the absence of significant EKG abnormalities." Tr. 591.

During the June 6, 2013 hearing before the ALJ, Ray wore a neck brace and complained of neck pain. Tr. 43. Ray explained that he recently experienced muscle spasms and would be going for an MRI in a few days. Tr. 43. Meanwhile, at the hearing, VE Melissa Fass Karlin opined that Ray's past work as a mailroom supervisor was light skilled work. Tr. 40-41.

Two days later, Ray underwent an MRI of his cervical spine with Radiologist Alan Wasserman, M.D., which revealed a disc bulge at C5-6, a herniated disc at C3-4, herniated discs at C4-5 and T-2 with impingement on the anterior thecal sac, and muscle spasms. Tr. 404.

After receiving the MRI and records associated with Ray's neck, the ALJ scheduled a second administrative hearing with a VE. TR. 51, 55, 336. At the second administrative hearing in September 2013, the ALJ asked VE Jay Steinbrenner to assume an individual of Ray's age, education, and work experience who could lift and/or carry up to 20 pounds occasionally and 10

pounds frequently; who could stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday and sit with normal breaks for a total of about six hours in that time period; who could frequently balance, stoop, kneel, crouch, and crawl; who lacked fine visual acuity; who could only frequently reach; who could not use the lower extremities for foot control or pedals; and who could alternate between sitting and standing every thirty minutes. Tr. 63-64. The VE testified that such an individual could perform Ray's past relevant work as a mailroom supervisor. Tr. 64.

Based on this evidence, the ALJ rendered a decision denying Ray's application. See Tr. 12-21. The ALJ first found that Ray was not engaged in substantial gainful activity. Tr. 14. Next, the ALJ found that Ray has the following severe impairments: (1) diabetes; (2) hypertension (3) hypertensive and diabetic retinopathy, which is a disease of the retina; and (4) a history of blood clots/deep vein thrombosis of the right arm. Id. At step three, the ALJ found that Ray did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments or functionally equaled the Listings. Tr. 15-16. While there is no medical listing regarding Ray's diabetes, the ALJ found that the evidence does not show Ray's diabetes to be of listing-level severity. Tr. 16. Specifically, the ALJ explained how Ray's impairments did not meet the criteria of (1) Listings 2.02, 2.03, and 2.04 (visual impairments); (2) Listing 4.12 (peripheral arterial disease); and (3) Listing 4.11 (chronic venous insufficiency). Id.

The ALJ next determined that Ray's residual functional capacity ("RFC") allows him to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Tr. 16. Specifically, the ALJ concluded that Ray could: lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) up to six hours in an eight-hour work day, and sit (with normal breaks) up to six hours in an eight-hour work day;

frequently bend, stoop, balance, kneel, crouch, or crawl; frequently perform fine visual acuity and cannot work with small objects; frequently reach; cannot operate foot controls or foot pedals using lower extremities; and must be allowed to alternate between sitting and standing positions every thirty minutes. Tr. 16. Finally, the ALJ found that Ray is capable of performing his past relevant work as a mailroom supervisor because that job does not require him to do work-related activities beyond those in Ray's RFC. Tr. 20. Therefore, the ALJ concluded that Ray was not disabled. Id.

## III. ANALYSIS

Ray offers three reasons why the ALJ's finding was in error. He argues (1) at step two, the ALJ did not consider three impairments; (2) the RFC is not based on substantial evidence; and (3) the ALJ erred in finding Ray capable of performing his past relevant work as a mailroom supervisor. The Court disagrees with Ray's first two arguments, but agrees with his third.

### A. Severe Impairments

Ray argues that the ALJ should have found his cardiac ischemia, herniated cervical/thoracic discs, and dermatological condition to be severe impairments. Pl.'s Br. 10-20, ECF No. 10. His argument fails for two reasons.

Step two of the analysis requires the applicant to show that he or she has a severe impairment that limits the ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Severity is a low bar. It means something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (citation and quotes omitted). And "work activities" means, among other things, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." Id. Importantly, however, it is the applicant's burden to show that an impairment is severe. Id.

7

That brings us to the first problem with Ray's argument. Ray was required to present evidence that his cardiac ischemia, herniated cervical/thoracic discs, and dermatological condition were abnormalities that had more than a de minimus effect on his ability to work. See Salles v. Commissioner of Soc. Sec., 229 F. App'x 140, 145 (3d Cir. 2007). He did not do so, and the ALJ explained why. As to ischemia, the ALJ explained Ray's chest pains, treatments from Drs. Hoffman and Rogers, which did not reveal anything significant, the lack of active treatment, and concluded that any limitation was minimal. Tr. 15. The ALJ explained, with similar detail, why Ray's disc and skin issues were not severe. Id.

Ray responds that the ALJ ignored the timing of these events. For example, he argues that, while Dr. Hoffman and Dr. Roger's findings that Ray did not have any neck limitations occurred February 2012 and April 2013 respectively, see Tr. 382, 586, Ray's complaints of neck pain and muscle spasms and Wasserman's MRI revealing disc herniation occurred in June 2013, Tr. 43, 404. But the ALJ did account for the June 2013 evidence. He discussed those findings and recognized that they constituted limitations. Tr. 15. But the ALJ did not find evidence that the limitations were severe, particularly because Ray did not provide evidence that he is currently undergoing treatment or taking medication for the pain. Tr. 15; see also Salles, 229 F. App'x at 145 ("The fact that [the applicant's] gall bladder disease, Hepatitis, and headaches from eye strain evidently were either not treated at all . . . supports the ALJ's findings that these impairments were not severe."). The ALJ accounted for Ray's evidence and explained why it was insufficient, so his decision at step two was supported by substantial evidence.

Second, even if the ALJ's finding was incorrect, any error would have been harmless because the step two decision was ultimately favorable to Ray. "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step

8

two, any error the ALJ made in this determination was harmless." Auriemma v. Colvin, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing Salles, 229 F. App'x at 145 n.2). The ALJ found in Ray's favor on four limitations. He found Ray's diabetes, hypertension, hypertensive and diabetic retinopathy, and history of blood clots/deep vein thrombosis of the right arm were severe impairments, and the ALJ continued with the sequential evaluation. Tr. 14. And Ray does not demonstrate how including the heart, disc, or skin conditions at step two would change the outcome of the case.[1] Thus, any error in not considering the conditions were harmless.

Thus, the ALJ's decision at step two will stand.

**B. RFC Determination**

Ray next argues that the ALJ's RFC determination is not supported by substantial evidence. He argues that the ALJ should not have found that he could stand or walk for six hours per day given that he has neuropathy in his lower extremities. Ray Br. 23-25.

An individual's RFC is an assessment of the most he can still do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1527(d)(2), 416.945(a); Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999). In making an RFC determination, the ALJ considers the degree of any resulting functional limitations, not the mere presence or diagnosis of an impairment. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991); Walker v. Barnhart, 172 F. App'x 423, 426 (3d Cir. 2006) ("Mere presence of a disease or impairment is not enough. A claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity.").

---

[1] Ray offers only the conclusory argument that, because the ALJ did not consider the new impairments at step two, "the impairments and their [e]ffects were not considered in combination with acknowledged impairment at step three and played no part at all at the step four formulation of the RFC finding." Ray Br. 20. But he does not say why these impairments would change the result in the later steps.

9

Here, the ALJ was correct in not including any neuropathic limitation in Ray's RFC. Tr. 16-20. In relevant part, the ALJ found that Ray can stand or walk (with normal breaks) for up to six hours per eight-hour work day. Tr. 16. Ray contends, however, that the diagnoses of diabetic neuropathy from Drs. Gastell and Hesquiarosa demonstrate that he cannot stand or walk for that long. Tr. 637. But the ALJ correctly rejected those doctors' conclusions. That is because their medical records did not establish any limitation associated with neuropathy. Instead, their records consist of several diagnosis slips that contain the word "neuropathy" with no further description. See Tr. 637-38. Their records contained no evidence of objective tests or treatment notes demonstrating the severity of Ray's neuropathy or accompanying symptoms in general. Nor are there any records to show that his neuropathy would preclude him from standing or walking for six hours, in particular. The ALJ also pointed to several medical opinions of record supporting the conclusion that Ray's neuropathy did not impact his residual ability to sit or stand. Tr. 18-19. The ALJ noted that Dr. Hoffman reported that Ray had no major neuropathic symptoms, see Tr. 382, Dr. Sujovolsky observed that Ray's neurological exam was normal and no abnormalities in his extremities, see Tr. 405, and that Ray reported that he can do a number of physical activities, like mopping, watching tv, and using public transportation, which suggest he is able to engage in some physical activity, see Tr. 296.

As such, the ALJ's RFC finding that Ray could stand or walk for six hours in an eight-hour day was supported by substantial evidence.

**C. Ability to Perform Past Relevant Work**

Finally, Ray argues that the ALJ erred in finding that Ray is able to perform his past relevant work as a mailroom supervisor. Specifically, the ALJ found that Ray can still be a mailroom supervisor because, among other things, he can "exercise a sit/stand option every 30

minutes throughout the workday." Tr. 20. Ray argues that the finding lacks substantial evidence because there is no evidence that a mailroom supervisors can choose to sit or stand every 30 minutes. On this point, the Court agrees.

The ALJ found that Ray worked as a mailroom supervisor, which according to the Dictionary of Occupational Titles ("DOT") is deemed light work with a specific vocational preparation ("SVP") of 6. See Tr. 20; DOT No. 209.137-010, Mailroom Supervisor, 1991 WL 671762. The ALJ then stated, "In comparing the claimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The claimant's [RFC] is limited to performing light work duties with some postural limitations and the ability to exercise a sit/stand option every 30 minutes throughout the workday." Tr. 20.

It is unclear why the ALJ attributed a sit/stand option to mailroom supervisors. At the outset, Ray notes, and the Government concedes, that the DOT for a mailroom supervisor does not discuss a sit/stand option. So the limitation must come from some other source.

The Government points the Court to SSR 83-12, 1983 WL 31253, but that policy statements do not state that a mailroom supervisor has the option to sit or stand every 30 minutes either. A mailroom supervisor is light, skilled work. See DOT No. 209.137-010; SSR 00-4P, 2000 WL 1898704 (explaining that "skilled work corresponds to an SVP of 5-9 in the DOT"). SSR 83-12 notes that there are times when applicant's RFC "is compatible with the performance of . . . light work except that the person must alternate periods of sitting and standing." Id. at *4. If so, the applicant "is not functionally capable of doing . . . the prolonged standing or walking contemplated for most light work." Id. The Government reads the SSR as saying that *some* light work jobs are performable with a sit/stand option. That may be true since SSR 83-12 says only

11

that sit/stand options preclude "most," but not all, light work. But that merely begs the question whether a mailroom supervisor in particular is the kind of light work that can or cannot be completed with a sit/stand option. SSR 83-12 does not answer that question, though.

Moreover, Ray's testimony about his job suggests that he did <u>not</u> have a sit/stand option. In his first hearing before the ALJ, Ray stated, "when I was working, mailroom supervisor, I was lifting, I would say, maybe 20-pound cases of paper, moving heavy machinery like copy machines; and setting up the CEO's conference room, the board room, fixing the chairs and putting tables together for them, whatever meetings they were having. And *I constantly was on my feet throughout the whole office*, picking up mail, dropping off mail . . . you know, *that type of job I was always on my feet* and walking around." Tr. 32-33, 43. (emphasis added). At his second hearing, Ray stated, "I was picking up mail carts for the company. I was roaming the whole office, picking up mail to go out, doing faxes for the company." Tr. 56. None of these descriptions support a finding that he could sit or stand at will every 30 minutes. And that is a critical omission because "[t]he claimant is the primary source for vocational documentation . . . Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of . . . the *individual's statements* as to which past work requirements can no longer be met . . . ." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 123 (3d Cir. 2000) (original emphasis) (quoting SSR 82-62). Yet the ALJ's decision does not address this testimony.

Finally, the testimony from VE Steinbrenner does not credibly support the sit/stand option either. During the hearing, the ALJ asked the VE whether a hypothetical person with Ray's RFC, including a sit/stand option, could be a mailroom supervisor. Tr. 63-64. The VE answered, "I don't think there's anything there that would preclude the past work. My understanding is he supervised over 40 people. I would think he had relative freedom assuming his postures." Tr. 64.

12

But the VE did not explain why a supervisory role necessarily includes a sit/stand option. Moreover, the ALJ accepted the VE's conclusion, see Tr. 20, without addressing Ray's statements about his job even though those statements undermined the VE's conclusion. The Government's brief does not explain this either.

As such, the ALJ's finding at step four that Ray can perform his past work as a mailroom supervisor is not supported by substantial evidence. On remand the ALJ should explain the provenance of the sit/stand option as it relates to mailroom supervisors and address any inconsistency between that the sit/stand option and Ray's testimony about his job requirements.

### IV. CONCLUSION

For the reasons set forth above, the ALJ's unfavorable decision is **VACATED AND REMANDED** consistent with this Opinion. An appropriate Order accompanies this Opinion.

**Dated: July 31, 2017**

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**